IN RE APPLICATION OF JERSEY CENTRAL POWER AND LIGHT CO., TO LOCATE A SUB STATION IN THE BOROUGH OF MONMOUTH BEACH.

IN RE APPLICATION TO INTERVENE BY LAWRENCE WESTON KRIEGER AND SALLY M. KRIEGER, INTERVENORS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 1, 1974—Decided October 9, 1974.

Before Judges HALPERN, CRAHAY and ACKERMAN.

*Mr. Robert M. Wood* argued the cause for appellants (*Messrs. Meth, Wood, Neff & Cooper,* attorneys).

*Mr. Edward J. McNeil* argued the cause for respondent Jersey Central Power & Light Company.

*Mr. William G. Bassler* argued the cause for respondent Borough of Monmouth Beach (*Messrs. Labrecque, Parsons & Bassler,* attorneys).

*Mr. William F. Hyland,* Attorney General of New Jersey, filed a statement in lieu of brief on behalf of the Board of Public Utility Commissioners (*Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Mr. Bertram P. Goltz, Jr.,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

HALPERN, P. J. A. D. The Kriegers appeal from orders of the Board of Public Utility Commissioners (Board) which (1) granted permission to Jersey Central Power & Light Company (Jersey) to erect an electrical substation in the Borough of Monmouth Beach, across the street from the summer residence of the Kriegers, and (2) denied the Kriegers' application to intervene or to rehear and reconsider Jersey's application. The primary issue presented is whether the Kriegers' constitutional right to due process was denied when the Board failed to give them notice of Jersey's application to erect the substation and to be heard in connection therewith.

A brief summary of the facts revealed in the record will aid in understanding the issues involved. Jersey owned land on an abandoned railroad right-of-way in Monmouth Beach upon which it sought to erect an electrical substation to service the public in that area. The contemplated use was a permitted one under the borough's zoning ordinance, but required Jersey to apply to the board of adjustment for a special exception use permit. Jersey applied for the special

use permit and gave the Kriegers, among others, the notice of its application as required under the ordinance. After a full hearing, at which the Kriegers appeared and voiced their objections, Jersey's application was denied.

Thereafter, pursuant to *N. J. S. A.* 40:55–50,[1] Jersey applied to respondent Board for permission to erect the substation at the same location. As required by the statute, Jersey gave notice of its application and the date of hearing to the borough and to the borough's planning board and board of adjustment. In addition, a copy of the notice was published prior to the hearing in the *Asbury Park Press,* a newspaper which has substantial circulation in the borough, notifying the public of the application and the date of hearing.

The Board held a hearing on the application at which the borough was represented by counsel. Following the hearing, and after six months of negotiations, Jersey's engineers and the borough's representatives resolved the latter's objections to the installation. Immediately thereafter, the borough withdrew its appearance. On April 4, 1974 the Board granted Jersey's application to erect the substation. Prior to the borough's withdrawal from the proceedings, and before the approval was granted by the Board, the Kriegers made written application to intervene in order to present their objections. The Board denied the Kriegers' request when they refused to present any new evidence which would warrant any further hearings or findings. The Kriegers' response to the Board's invitation was that their principal concern was the lack of notice to them.

---

[1] "This article or any ordinance or regulation made under authority thereof, shall not apply to existing property or to buildings or structures used or to be used by public utilities in furnishing service, if upon a petition of the public utility, the board of public utility commissioners shall after a hearing, of which the municipality affected shall have notice, decide that the present or proposed situation of the building or structure in question is reasonably necessary for the service, convenience or welfare of the public."

We turn to the issue of notice. The Legislature has delegated to all municipalities the power to enact zoning ordinances for the prime purpose of enabling them to regulate the physical development and growth of their communities in accordance with a comprehensive plan, by confining particular uses to defined areas. *N. J. S. A.* 40:55–30 *et seq.* The Legislature gave local boards of adjustment the power to permit, within the terms of their zoning ordinances, special exception uses where such could be granted without substantial detriment to the public good, and would not substantially impair the intent and purpose of their zone plans and ordinances. *N. J. S. A.* 40:55–39(b). The statutory scheme requires an applicant seeking a special exception use to give notice of his application to all owners of property within 200 feet of the property to be affected. *N. J. S. A.* 40:55–44.

However, it is crystal clear that the provisions of the enabling zoning statutes and of any municipal zoning ordinance shall not apply to the property or structure of a public utility. When a public utility finds it necessary to use its property or structures in order to furnish service to the public, it may bypass the municipal zoning authorities and petition the Board of Public Utilities for relief upon giving notice of its intention to the municipality affected. *In re Monmouth Consolidated Water Co.*, 47 *N. J.* 251, 257–258 (1966) ; *N. J. S. A.* 40:55–50. The burden is then placed squarely on the Board of Public Utilities to hold a hearing and determine whether the granting of relief "is reasonably necessary for the service, convenience or welfare of the public." In short, the Legislature deemed the regulation of public utilities, and the enforcement of their obligation to render proper public service, as a matter that transcended local concern. *In re Application of Hackensack Water Co.*, 41 *N. J. Super.* 408, 422 (1956). In defining the statutory duty imposed upon the Board in considering applications of this type, the court in *In re Monmouth Consolidated Water Co., supra,* said:

The hearing before the board on the utility's petition to establish a discordant use in a prohibited zone was not intended by the Legislature to be simply a *pro forma* approval of management's decision. *In re Application of Hackensack Water Co., supra*, 41 *N. J. Super.*, at p. 419. Otherwise the requirement in the statute for notice to the affected municipality (which was given in this case) would have no particular point. Further consideration of the matter should not be limited to the ordinary factors which govern a decision as to whether the public convenience and necessity will be served by a course of operation or conduct proposed by a utility. The issue is broader: (a) Is the projected deviation from the zoning ordinance sufficiently necessary for the convenience and welfare of the public in connection with the service provided by the utility to warrant its authorization; and (b) : If so, can the impact of the discordancy on the locality be lessened by imposition of reasonable conditions designed to preserve aesthetic and other relevant zoning considerations?

In passing upon the application the board has ample authority as well as the duty to study the suitability of the locus chosen for the utility structure, the physical character of the uses in the neighborhood, the proximity of the site to residential development, the effect on abutting owners, its relative advantages and disadvantages from the standpoint of public convenience and welfare, whether other and equally serviceable sites are reasonably available by purchase or condemnation which would have less impact on the local zoning scheme, and last, but by no means least, whether any resulting injury to abutting or neighboring owners can be minimized by reasonable requirements relating to the physical appearance of the structure, adequate lot size, front and rear set back lines as well as appropriate side lines regulating the positioning of the structure on the lot, and by proper screening of the facility by trees, evergreens, or other suitable means. The board should weigh all of these factors and while no controlling weight should be given to purely local considerations, they should not be ignored. Compare *Washington Twp. v. Ridgewood Village*, 26 *N. J.* 578, 584–585 (1958) ; *Kozesnik v. Montgomery Twp.*, 24 *N. J.* 154, 176 (1957). And in our judgment there is no doubt as to its power to tailor the grant of approval of the site selected by the utility by attaching appropriate conditions and safeguards relating to the matters specified above. [at 259–260]

The requirement of giving notice only to the municipality affected serves to give the municipality an opportunity to be heard to safeguard its interests in preserving the viability of its zoning ordinance and plan, as well as the interests of its residents.

█ The Board's decision in granting the permit to Jersey is amply supported by the record. We see no violation of

due process because personal notice was not given the Kriegers. The Legislature's determination as to who shall receive notice was a reasonable exercise of its legislative discretion. We note in passing, that *N. J. S. A.* 40:55–50 has been in effect since 1928, and its notice provisions have never been attacked on due process grounds.

By the same reasoning, the Kriegers were not necessary parties to Jersey's application to the Board. Even if they had been given personal notice of Jersey's application, such would not make them parties to the proceedings, it would merely give them the opportunity to voice their objections. See *Peoples Trust Co. v. Hasbrouck Heights,* 60 *N. J. Super.* 569, 575 (App. Div. 1959), where residents within 200 feet of property being considered for a variance were held not to be necessary or indispensable parties to an appeal from the decision of the board of adjustment.

Finally, we find no abuse of discretion in the Board's action in refusing to permit the Kriegers to intervene, or to reopen the hearing. The Kriegers were asked to submit the proofs they would present if their request were granted so that the Board could determine what course of action to follow, but they saw fit not to do so. They should not now be heard to complain.

Affirmed.